**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | |
|---|---|
| LIBARDO JARAMILLO, individually and on behalf of all others similarly situated, | : : : |
| Plaintiff, | : : |
| v. | :   CASE NO.: 1:23-CV-196 (LAG) |
| TAURUS INTERNATIONAL MANUFACTURING, INC., and TAURUS HOLDINGS, INC., | : : : : : |
| Defendants. | : : |

## ORDER

Before the Court is Defendants' Motion to Dismiss. (Doc. 12). For the reasons stated below, Defendants' Motion (Doc. 12) is **GRANTED**.

## FACTUAL BACKGROUND

This is a products liability case involving defective handguns brought pursuant to this Court's diversity jurisdiction.[1] Plaintiff brought this putative class action on behalf of himself and all other individuals who own a Taurus GX4 Pistol[2] (Class Pistol). (Doc. 1 ¶ 1). Defendants Taurus International Manufacturing, Inc. (TIMI) and Taurus Holdings, Inc. (Taurus Holdings), design, manufacture, assemble, distribute, market, and sell the Class Pistols. (*Id.*). Taurus Holdings is the one hundred percent stockholder of TIMI and is a citizen of Georgia. (*Id.* ¶ 14, 15). Plaintiff is a citizen of Arizona who purchased a Class Pistol from Defendants on or about February 1, 2022. (*Id.* ¶¶ 13, 48, 121). Plaintiff lent his Class Pistol to his friend, Elise Hurrle, a cashier at a convenience store in Mesa, Arizona.

---

[1]   On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts all facts alleged in Plaintiff's Complaint (Doc. 1) as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Anderson v. Wilco Life Ins.*, 17 F.4th 1339, 1344 (11th Cir. 2021) (citation omitted).

[2]   As defined by Plaintiff in the Complaint, the Class Pistols include "'All Series' or Models of the Taurus GX4™ Pistols." (Doc. 1 ¶ 25).

(*Id.* ¶ 49). On April 7, 2023, Ms. Hurrle dropped the Class Pistol at the convenience store and was killed when the gun discharged. (*Id.* ¶ 50). Plaintiff does not allege that his firearm was damaged or rendered inoperable during the incident.

Plaintiff alleges that the Class Pistols all suffer from a common "drop fire defect" that "causes the trigger . . . to move rearward when the pistol is subjected to an impact or dropped." (Doc. 1 ¶¶ 2, 26–27). The drop fire defect causes the Class Pistols "to fire unexpectedly and against the intentions of the pistol's handler, potentially causing serious injury, and even death." (*Id.* ¶ 2) (emphasis omitted). Plaintiff contends that despite being aware of the defect, Defendants concealed the defect from consumers, misrepresented the truth, and continue to sell the defective Class Pistols. (*Id.* ¶¶ 8–9, 11–12, 31, 45). Plaintiff alleges that Defendants have been aware of the defect since early production when the Class Pistols "were first designed, manufactured, tested, produced, and distributed." (*Id.* ¶ 32). Plaintiff alleges that, at the very latest, Defendants have been aware of the defect since April 2022 when they were made aware of a drop fire incident involving the GX4 pistol occurring in Kentucky. (*Id.* ¶¶ 33–34). Thereafter, Defendants were made aware of several more drop fire incidents involving the GX4 pistol, including the accident involving Ms. Hurrle in April 2023. (*Id.* ¶¶ 35–38).

Plaintiff alleges that the Class Pistols are worthless due to the defect, and that the defect is not repairable. (Doc. 1 ¶¶ 8–9, 12, 41). Moreover, Plaintiff alleges that Defendants have "never issued an effective and honest warning to the public" or recalled the Class Pistols. (*Id.* ¶ 7). On or about May 23, 2023, Defendants created a landing page on their website which "admits that '[s]ome GX4 pistols assembled and sold only in the United States may, under certain circumstances, discharge when dropped.'" (*Id.* ¶ 40 (quoting Taurus GX4 Pistols Important Safety Notice, https://gx4safetynotice.com/)). "The website instructs the customer to enter the serial number of their pistol and it 'will promptly let you know whether your GX4 is subject to this Notice.'" (*Id.* (quoting Taurus Safety Notice)). "If the pistol is subject to the notice, then 'Taurus will inspect, repair, if necessary, and return your pistol to you as soon as possible, FREE of charge.'" (*Id.* (quoting Taurus Safety Notice)). Plaintiff alleges that the Safety Notice is inadequate in many ways, including:

> (1) the Notice is not a recall; (2) there is no statutory mandated and administrative process to provide the Notice; (3) the Notice fails to provide Class Members with complete relief; (4) the Notice represents that the pistols will be repaired, while repair is not possible given the nature of the Defect and the Class Pistols must be returned to Taurus, destroyed, and Class Members given full cash refunds; (5) Taurus has retained all ill-gotten gains derived from the sale of the Class Pistols; and (6) Taurus has made no substantial efforts beyond a Notice on their own website to make the public aware of this Defect.

(Doc. 1 ¶ 41).

## PROCEDURAL BACKGROUND

On November 10, 2023, Plaintiff filed the Complaint against Defendants TIMI and Taurus Holdings. (Doc. 1). Plaintiff's Complaint asserts claims for:

1. Violation of Georgia's Uniform Deceptive Trade Practices Act (*Id.* ¶¶ 65–82);
2. Negligence (*Id.* ¶¶ 83–85);
3. Strict liability in tort under Georgia law (*Id.* ¶¶ 86–93);
4. Breach of implied warranty of merchantability (*Id.* ¶¶ 94–105);
5. Negligent failure to disclose, failure to warn, concealment, and misrepresentation (*Id.* ¶¶ 106–113);
6. Fraudulent concealment and intentional failure to warn (*Id.* ¶¶ 114–119); and
7. Unjust enrichment (*Id.* ¶¶ 120–124)

Plaintiff seeks: (1) compensatory, exemplary, or punitive damages, treble damages, and statutory damages, including interest thereon; (2) injunctive relief requiring Defendants to recall the Class Pistols; (3) declarations that the Class Pistols suffer from a common defect, that Defendants knew of the defect and failed to disclose material facts about the defect, that Defendants are financially responsible for notifying all Class Members of the defect, that Defendants must disgorge ill-gotten profits and make full restitution to Plaintiff and the Class Members; and (4) attorney's fees and costs. (Doc. 1 at 28–29). Defendants filed the Motion to Dismiss on January 5, 2024. (Doc. 12). Plaintiff responded on January 26, 2024 (Doc. 17), and, after an extension, Defendants replied on February 23, 2024 (Doc.

3

19). Accordingly, the Motion to Dismiss (Doc. 12) is ripe for review. *See* M.D. Ga. L.R. 7.3.1(A).

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face if the complaint alleges enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A complaint must plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. The Court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs," but the same liberal reading does not apply to legal conclusions. *Anderson*, 17 F.4th at 1344–45 (first citing *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010); and then citing *Iqbal*, 556 U.S. at 678). "[A] plaintiff armed with nothing more than conclusions" cannot "unlock the doors of discovery[.]" *Iqbal*, 556 U.S. at 678–79. Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

## DISCUSSION

Defendants move to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and, alternatively, under Federal Rule of Civil Procedure 12(b)(6) for failure to state claims. (Doc. 12-1 at 1).

### I. Subject Matter Jurisdiction

As to subject matter jurisdiction, Defendants contend that Plaintiff does not have standing to pursue damages or injunctive relief, and that Plaintiff's claims are not ripe for review. (Doc. 12-1 at 4–7). "A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack." *Stalley ex rel. U.S. v. Orlando Regional Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (citation omitted). "A facial attack on the complaint requires the court merely to look and

4

see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1232–33 (citation omitted). "By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Id.* at 1233. Defendants appear to make a factual attack by attaching extrinsic evidence, including the Taurus GX4 Instruction Manual, to their Motion to Dismiss. (*See* Docs. 12-2, 12-3).

### A. Standing

#### 1. Standing to Seek Damages

To have standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1083 (11th Cir. 2019) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Defendants contest the first element—injury in fact—arguing that Plaintiff lacks standing to seek monetary damages because Plaintiff has not alleged a concrete injury. (Doc. 12-1 at 5). Plaintiff argues that he adequately alleged an injury because he alleges an economic loss—that his Class Pistol is now worthless. (Doc. 17 at 3).

"An injury-in-fact must be both (1) particularized ('affect the plaintiff in a personal and individual way') and (2) concrete ('real, and not abstract')." *MSPA Claims 1, LLC v. Tenet Florida, Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019) (quoting *Spokeo*, 578 U.S. at 339). The Eleventh Circuit has repeatedly held that economic injuries are concrete injuries. *See, e.g.*, *MSPA*, 918 F.3d at 1318 (acknowledging that economic injuries are the "epitome of concrete"); *see also Debernardis*, 942 F.3d at 1084 ("Certainly, an economic injury qualifies as a concrete injury."). Defendants argue, however, that Plaintiff has not stated a concrete injury because Plaintiff failed to plead the purchase amount for his Class Pistol. (Doc. 12-1 at 5). While Plaintiff does not allege a specific amount, Plaintiff clearly alleges that he purchased a defective Class Pistol, and that the defect rendered his purchase worthless. (*See* Doc. 1 ¶¶ 6, 8, 47–51). Put simply, Plaintiff paid for a non-defective pistol, but he received a defective pistol; thus, he was deprived of the benefit of his bargain. *See*

5

*In re Takata Airbag Prod. Liab. Litig.*, 2023 WL 6274837, at *4 (S.D. Fla. Aug. 24, 2023); *see also Carder v. Graco Children's Prods., Inc.*, 558 F. Supp. 3d 1290, 1306–07 (N.D. Ga. 2021). Such an economic injury is sufficient to establish standing. *See Carder*, 558 F. Supp. 3d at 1306–07; *Debernardis*, 942 F.3d at 1084 (citation omitted) ("A person experiences an economic injury when, as a result of a deceptive act or unfair practice, he is deprived of the benefit of his bargain."). Furthermore, "general factual allegations of injury (*i.e.*, overpayment) suffice at the pleadings stage because the Court must 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1204 (S.D. Fla. 2021) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

Defendants next contend, relying solely on out-of-circuit precedent, that their warranty to repair Plaintiff's Class Pistol, free of charge, vitiates any claim for economic loss or diminished value. (Doc. 12-1 at 5–6). This argument assumes, however, that Defendants' warranty adequately and fully compensates Plaintiff for his damages. This assumption directly contradicts Plaintiff's allegations that the warranty "fails to provide . . . complete relief" and that "repair is not possible given the nature of the defect[.]" (Doc. 1 ¶ 41). Moreover, whether the warranty adequately and fully compensates Plaintiff is an issue of fact not appropriately addressed at this stage. *See Johnson v. 3M*, 563 F. Supp. 3d 1253, 1308 (N.D. Ga. 2021).

Finally, Defendants argue that Plaintiff lacks standing to bring claims as to models of the Class Pistols that he did not purchase. (Doc. 12-1 at 6). In so arguing, Defendants incorrectly conflate class standing and individual standing. "[C]lass representative standing does not necessarily require that the class representative suffer injury at the same place and on the same day as the class members." *Fox v. Ritz-Carlton Hotel Co., LLC*, 977 F.3d 1039, 1047 (11th Cir. 2020) (citation omitted). "Rather, it requires that the named plaintiff and class members have the same interest and suffer the 'same injury.'" *Id.* (holding that a plaintiff had standing to assert claims as to all forty-nine Ritz-Carlton locations, despite personally only dining at three locations, because he alleged that Ritz-Carlton employed the same deceptive practices at each of its restaurants). The Eleventh Circuit considered

6

this question in *Carter v. Forjas Taurus, S.A*. There, the court approved a putative class action settlement brought by a sheriff's deputy against a gun manufacturer. 701 F. App'x 759, 765 (11th Cir. 2017). Although the class-representative had purchased only one model of the nine gun models at issue, the court found that he had standing as to all nine models because "[he] alleged he owned a class gun that suffered from the same defects as the rest of the class guns." *Id.* at 765. The court, therefore, held that the Plaintiff suffered "from the same alleged injury as the rest of the class." *Id.* (citation omitted). Accordingly, while Plaintiff purchased only one model of the GX4 pistol, Plaintiff adequately has pled that all Class Pistols were designed and manufactured in the same way and suffer from the same defect. (Doc. 1 ¶ 27 ("[T]he design and manufacturing of the Class Pistols is common to all Class Pistols and is defective in all Class Pistols . . . .")). Plaintiff thus has class representative standing to bring claims as to all models of the GX4 pistol. *Carter*, 701 F. App'x at 765; *see also Fox*, 977 F.3d at 1047.

### 2. Standing to Seek Injunctive Relief

"[A] plaintiff must demonstrate standing for each claim and for each form of relief that is sought." *JW ex rel. Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1264 (11th Cir. 2018) (quotation marks omitted) (quoting *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017)). "In addition to past injury, a plaintiff seeking injunctive relief must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013) (citation omitted) (internal quotations omitted). "'[B]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief' only if his injury in fact is 'a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury.'" *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1253 (11th Cir. 2023) (quoting *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001)).

Plaintiff—the only named Plaintiff in this putative class action—has not alleged that he will be affected by Defendants' allegedly unlawful conduct in the future so as to sustain a claim for injunctive relief. Rather, Plaintiff generally alleges that "it is only a matter of time before more individuals are seriously injured or killed" by the defective Class Pistols

(Doc. 1 ¶ 7). While Plaintiff has alleged that he purchased a defective Class Pistol in the past, the Complaint is devoid of any allegations that Plaintiff continues to use his defective Class Pistol, or that he intends to purchase another one. *See Ohio State Troopers Assoc., Inc., v. Point Blank Enters., Inc.*, 347 F. Supp. 3d 1207, 1227 (S.D. Fla. 2018) (holding that named plaintiffs lacked standing for injunctive relief when they purchased a defective ballistic vest in the past, but failed to allege that they continued to wear the defective vest, or that they intended to purchase more vests in the future); *see also Williams*, 65 F.4th at 1254 (holding that named plaintiffs lacked standing for injunctive relief when they failed to allege that they planned to purchase defective products again in the future); *Bauser v. Porsche Cars North America, Inc.*, No. 1:23-CV-01054-ELR, 2024 WL 2406884, at *18–*19 (N.D. Ga. Mar. 25, 2024) (same). Thus, Plaintiff has not shown a sufficient likelihood that *he* will be affected by a risk of death or serious injury from using the defective Class Pistol in the future. *See Ohio State Troopers*, 347 F. Supp. 3d at 1228 (collecting cases). Accordingly, Plaintiff does not have standing to seek injunctive relief; and any claims for injunctive relief, including the GUDTPA claim, analyzed more fully below, must be dismissed.

### B. Ripeness

Defendants argue that Plaintiff's claims are not ripe because the relief Plaintiff seeks is already offered by TIMI's warranty and Safety Notice. (Doc. 12-1 at 7). "Article III of the United States Constitution limits the jurisdiction of the federal courts to cases and controversies of sufficient concreteness to evidence a ripeness for review." *Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997) (citations omitted). "The ripeness inquiry requires a determination of (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration." *Id.* (first citing *Abbott Lab v. Gardner*, 387 U.S. 136, 149 (1967); and then citing *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995)). "Courts must resolve 'whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court.'" *Id.* (quoting *Cheffer*, 55 F.3d at 1524).

Defendants contend that Plaintiff's claims are not ripe because Plaintiff has not yet availed himself of the relief provided by Defendants' warranty and Safety Notice. (Doc. 12-1 at 7 (citing *Strama v. Toyota Motor Sales, U.S.A., Inc.*, No. 15 C 9927, 2016 WL 561936, at *2 (N.D. Ill. Feb. 12, 2016))). Defendants' reliance on *Strama*, however, is misplaced. In *Strama*, plaintiffs sued defendant Toyota for an oil consumption defect in their vehicle. *Strama*, 2016 WL 561936, at *1. Defendant provided a warranty program "which provided for repair services and reimbursement of costs to customers whose vehicle had the oil consumption defect." *Id.* at *2. The *Strama* court held that plaintiffs' claims were not ripe because plaintiffs had not requested repair and reimbursement from defendant in accordance with the warranty program, and because plaintiffs only speculated as to potential costs not covered by the warranty program. *Id.*

Here, in contrast, Plaintiff requests various relief not covered by the warranty or Safety Notice: compensatory and punitive damages, disgorgement of ill-gotten profits, and declarations that the Class Pistols have a defect, that Defendants knew of the defect, and that Defendants are financially responsible for notifying Class Members of the defect. (Doc. 1 at 28–29). Furthermore, Plaintiff alleges that the Safety Notice is inadequate, fails to provide Class Members with complete relief, and is discretionary as Defendants will provide repairs only "if necessary" after they inspect the product. (Doc. 1 ¶¶ 40–41). As such, Plaintiff's assertions are squarely in line with *McCabe* where the court held that a plaintiff's claims were not moot (*i.e.* still ripe) when plaintiff (1) asserted claims for compensatory and punitive damages, including damages in the form of diminished value due to defects and (2) showed that defendant's repair warranty was discretionary. *McCabe v. Daimler Ag*, No. 1:12-CV-2494-MHC, 2015 WL 11199196, at *4–*5 (N.D. Ga. Aug. 19, 2015). Accordingly, Plaintiff's claims are ripe. *See McCabe*, 2015 WL 11199196, at *5.

## II.  Failure to State Claims

### A.  GUDTPA Claim

Plaintiff brings a claim under Georgia's Uniform Deceptive Trade Practices Act (GUDTPA), O.C.G.A. § 10-1-370, *et seq*, which prohibits "deceptive trade practice[s]"

9

such as "[r]epresent[ing] that goods or services are of a particular standard, quality, or grade . . . if they are of another"; "[r]epresent[ing] that goods or services have . . . characteristics . . . uses, benefits, or quantities that they do not have"; "[a]dvertis[ing] goods or services with intent not to sell them as advertised"; and "[e]ngaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." (Doc. 1 ¶¶ 65–82); O.C.G.A. § 10-1-372(a). "The Georgia [Uniform] Deceptive Trade Practices Act . . . provides injunctive relief as its sole remedy." *See Byung Ho Cheoun v. Infinite Energy, Inc.*, 363 F. App'x 691, 695 (11th Cir. 2010); *Serveco North America, LLC v. Bramwell*, No. 4:22-cv-140-MLB, 2023 WL 2583275 (N.D. Ga. March 20, 2023) (quoting *Catrett v. Landmark Dodge, Inc.*, 560 S.E.2d 101, 106 (Ga. Ct. App. 2002)). Moreover, injunctive relief is available only "where the plaintiff has established a likelihood of future damage" because injunctive relief serves only "to prevent, prohibit or protect from future wrongs[,]" not remedy what is past. *Collins v. Athens Orthopedic Clinic*, 849 S.E.2d 213, 217 (Ga. Ct. App. 2020); *City of Rome v. Hotels.com, L.P.*, 549 F. App'x 896, 902 (11th Cir. 2013) (quoting *Catrett*, 560 S.E2d at 101); *Byung Ho Cheoun*, 363 F. App'x at 695 (dismissing plaintiffs' claim under GUDPTA because the defendant's acts "did not pose any future harm").

Thus, to have standing and state a claim under GUDTPA, Plaintiff must allege that he is likely to be damaged in the future by Defendants' unfair trade practices. *See Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1294 (N.D. Ga. 2018); *Silverstein v. Proctor & Gamble Mfg. Co.*, No. CV 108-003, 2008 WL 4889677, at *3 (S.D. Ga. Nov. 12, 2008). Plaintiff has not alleged that he is likely to be damaged in the future by Defendants' deceptive trade practices as he does not allege that he intends to purchase another Class Pistol in the future. *See Amin*, 301 F. Supp. at 1294. In *Amin*, a class of plaintiffs filed suit under GUDTPA for a design defect in several cars manufactured and sold by defendant Mercedes-Benz USA. *Id.* Plaintiffs alleged that a defect in the HVAC system of the class vehicle "predisposed [the system] to produce a moldy odor under normal use conditions" and Mercedes "knew of the defect . . . and failed to notify . . . purchasers before they made the purchase." *Id.* at 1281–82. (internal quotations omitted).

10

Despite Plaintiffs' "claim that they might experience foul odors in their vehicle in the future," the *Amin* court found that plaintiff's allegations regarding defendant's marketing scheme were not sufficient to make out a claim under GUDPTA because the plaintiffs only made "allegation[s] of harm involving past conduct" and did not "allege[] that they intend to purchase [the class vehicle] in the future." *Id.* at 1293–94. Likewise, here, "most of the harm Plaintiff[] allege[s] is associated with allegedly deceptive practices occurring before or during the purchase of the [class firearm] or in [Defendants'] misrepresentation as to issues of repair." *Id.* Plaintiff does not "allege that [he] will be damaged in the future absent an injunction targeted at [Taurus'] [marketing scheme], much less allege *how* [he] will be damaged." *Id.* at 1293 (emphasis in original) (internal quotations omitted) (quoting *Terrill v. Electrolux Home Prods., Inc.*, 753 F. Supp. 2d 1272 (S.D. Ga. 2010)). Plaintiff's allegations about the risk of a drop-fire incident in the future also are insufficient to state a GUDTPA claim. Even assuming that such a harm "will likely occur in the future," it would be "the result of a previous alleged deceptive trade practice" as Plaintiff has already purchased the Class Pistol. *Amin*, 301 F. Supp. at 1294. Accordingly, Plaintiff fails to state a GUDTPA claim.

### B. Tort Claims

Plaintiff brings four tort claims for (1) negligence, (2) strict liability, (3) negligent failure to disclose, failure to warn, concealment and misrepresentation, and (4) fraudulent concealment and intentional failure to warn. (Doc. 1 ¶¶ 83–93, 106–119). Defendants move to dismiss these claims under the economic loss rule. (Doc. 12-1 at 10–11).

At the outset, the Court considers which state's law should apply to each of Plaintiff's tort claims. "As the Court's jurisdiction in this matter is based on diversity of citizenship, the Court must apply the choice of law rules of the forum state—Georgia." *Elder v. Reliance Worldwide Corp.*, 563 F. Supp. 3d 1221, 1230 (N.D. Ga. 2021) (citing *U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.*, 550 F.3d 1031, 1033 (11th Cir. 2008)); (*See* Doc. 1 ¶¶ 17–18). "The Georgia conflicts of law rule governing tort actions is *lex loci delicti*, or the place of the wrong." *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 678 (N.D. Ga. 2003) (citing *Velten v. Lippert*, 985 F.2d 1515, 1521 (11th Cir. 1993)). "'The

11

place of the wrong is the jurisdiction where the harm was suffered or where the last event necessary to make an actor liable for the alleged tort takes place.'" *Id.* (quoting *Velten*, 985 F.2d at 1521). But, "the application of another jurisdiction's laws is limited to its statutes and decisions construing those statutes"; thus, "[w]hen no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law." *Id.* (citing *Frank Briscoe Co., Inc. v. Ga. Sprinkler Co., Inc.*, 713 F.2d 1500, 1503 (11th Cir. 1983)); *see also Elder*, 563 F. Supp. 3d at 1230–31. Plaintiff specifically raises the strict liability claim under Georgia law, but he does not specify the law under which he seeks to raise the (1) negligence, (2) negligent failure to disclose, failure to warn, concealment and misrepresentation, or (3) fraudulent concealment and intentional failure to warn claims. (*See* Doc. 1 ¶¶ 83–93, 106–119). Accordingly, the Court applies Georgia law to all of Plaintiff's tort claims. *See In re Tri-State Crematory Litig.*, 215 F.R.D. at 679 ("[I]f the parties have not directed the Court's attention to statutes of foreign States, the Court must apply Georgia law[.]").

### 1. Economic Loss Rule

Defendants argue that Georgia's economic loss rule bars Plaintiff's tort claims. (Doc. 12-1 at 10–11). "The economic loss rule limits the ability of individuals to recover in tort for negligence where the duty breached arises solely out of a contract[.]" *Murray v. ILG Techs, LLC*, 798 F. App'x 486, 490 (11th Cir. 2020) (per curiam) (citing O.C.G.A. § 51-1-11(a)). If "the losses resulting from a defective product are purely economic in nature, the economic loss rule bars the plaintiff from seeking recovery under strict liability or negligence theories." *Home Depot U.S.A., Inc. v. Wabash Nat. Corp.*, 724 S.E.2d 53, 59 (Ga. Ct. App. 2012) (citations omitted). "'Economic loss' means damages for the loss of the value or use of the defective product itself, costs of repair or replacement of the defective product, or the consequent loss of profits, *unaccompanied by any claim of personal injury or damage to other property*." *Id.* (emphasis added) (first citing *Vulcan Materials Co. v. Driltech*, 306 S.E.2d 253, 256 (Ga. 1983); and then citing *Henderson v. Gen. Motors Corp.*, 262 S.E.2d 238 (Ga. Ct. App. 1979)). "The rationale underlying this rule is that when a defective product has resulted in the loss of the value or use of the

product itself, or the cost of repairing it, the plaintiff is merely suing for the benefit of his bargain." *Advanced Drainage Sys., Inc. v. Lowman*, 437 S.E.2d 604, 607 (Ga. Ct. App. 1993) (citation omitted). "The rule does not prevent a tort action to recover for injury to other property and persons[, however,] because the duty breached generally arises independent of the contract." *Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 948 (11th Cir. 1982).

Plaintiff argues that the economic loss rule is inapplicable to his tort claims because he seeks damages beyond purely economic damages given his allegations that the Class Pistols present "an imminent risk of death or serious bodily injury" and "have already killed and wounded Taurus customers or innocent bystanders." (Doc. 17 at 10–11). While the economic loss rule "does not apply to claims where a plaintiff seeks to recover damages for personal injury or damage to other property[,]" Plaintiff fails to allege any damage to his person or his property here. *See Johnson*, 563 F. Supp. 3d at 1304. Plaintiff alleges that his defective pistol killed his friend, Ms. Hurrle, but Plaintiff cannot recover for injuries to other people. (Doc. 1 ¶ 50); *Gen. Elec. Co. v. Lowe's Home Centers, Inc.*, 608 S.E.2d 636, 637 (Ga. 2005) ("[A] plaintiff cannot recover economic losses associated with injury to the person or damage to the property of another."). Moreover, the Complaint admits that Ms. Hurrle is not a potential class member, and this action "does not seek damages or make allegations of personal injuries caused by the defect in the Class Pistols." (Doc. 1 ¶ 53). Rather, Plaintiff seeks compensatory damages for the repair and/or replacement of the defect to render the Class Pistols safe, which are quintessential economic damages not available in tort under the economic loss rule. (Doc. 1 at 28); *see Home Depot*, 724 S.E.2d at 59. Plaintiff, therefore, has failed to state a claim unless an exception to the economic loss rule applies.

### 1. Accident Exception

Plaintiff next argues that, even if the economic loss rule does apply, his tort claims fall under the accident and misrepresentation exceptions to the rule. (Doc. 17 at 9–12). The accident exception allows a plaintiff to recover in tort "when there is a sudden and calamitous event that not only causes damage to the product but poses an unreasonable risk

13

of injury to persons and other property." *Odelia v. Alderwoods (Georgia), LLC*, 823 F. App'x 742, 749 (11th Cir. 2020) (per curiam) (citation omitted); *Home Depot*, 724 S.E.2d at 59. This exception, however, only applies when a plaintiff seeks to "recover for damages to the defective product itself[.]" *Silverpop Sys., Inc. v. Leading Market Techs., Inc.*, 641 F. App'x 849, 854 (11th Cir. 2016) (citation omitted). Plaintiff does not allege that his Class Pistol was damaged as a result of the Hurrle accident, nor does Plaintiff seek to recover for damage to the pistol itself. Accordingly, the accident exception is inapplicable here. *See Silverpop*, 641 F. App'x at 854; *see also Murray v. ILG Techs., LLC*, 378 F. Supp. 3d 1227, 1249 (S.D. Ga. 2019), *aff'd*, 798 F. App'x 486 (11th Cir. 2020). Accordingly, Plaintiff's strict liability claim (Count III) is barred by the economic loss rule and must be dismissed.

### 2. Misrepresentation Exception

Under the misrepresentation exception to the economic loss rule:

> [O]ne who supplies information . . . in any transaction in which [that person] has a pecuniary interest has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended that it be so used. This liability is limited to a foreseeable person or limited class of persons for whom the information was intended, either directly or indirectly.

*Erler v. Hasbro, Inc.*, 506 F. Supp. 3d 1275, 1292 (N.D. Ga. 2020) (citing *Robert & Co. Assoc. v. Rhodes-Haverty P'ship*, 300 S.E.2d 503, 504 (Ga. 1983)); *see also ASC Const. Equipment USA, Inc. v. City Commercial Real Estate, Inc*., 693 S.E.2d 559, 566 (Ga. Ct. App. 2010). Claims of fraud and negligent misrepresentation will not be barred by the economic loss rule when a plaintiff alleges "facts to support a specific false representation on the part of [the] [d]efendants" on which the plaintiff "justifiably relied." *Erler*, 506 F. Supp. 3d at 1292; *see also Odelia*, 823 F. App'x at 749 ("In order to establish the [misrepresentation exception], the plaintiff has to prove the five elements of fraud."). Plaintiff's negligence (Count II), negligent failure to disclose, failure to warn, concealment and misrepresentation (Count V), and fraudulent concealment and intentional failure to

14

warn (Count VI) claims do not fall under this exception because Plaintiff failed to make specific factual allegations of misrepresentation regarding these causes of action. (*See* Doc. 1 ¶¶ 83–93); *see Silverpop*, 641 F. App'x at 854 (concluding that the misrepresentation exception did not apply because plaintiff "provided no allegations of misrepresentation with regard to its cause of action for negligence"). The complaint alleges generally that Defendants "fraudulently concealed and intentionally failed to warn Plaintiff . . . of the Defect and the inability to repair the Defect" and "falsely and fraudulently represented to Plaintiff . . . that their Class Pistols were safe for normal and intended use." (Doc 1. ¶ 9). These general and conclusory allegations are insufficient to invoke either exception to the economic loss rule. Accordingly, Count II, Count V and Count VI are barred by the economic loss rule and must be dismissed.

### C. Implied Warranty Claim

Plaintiff brings a claim for breach of implied warranty of merchantability. (Doc. 1 ¶¶ 94–105). Defendants argue that Plaintiff fails to state this claim because Plaintiff does not allege that he is in privity with either TIMI or Taurus Holdings. (Doc. 12-1 at 12). As a threshold matter, the parties dispute whether Georgia or Arizona law applies to this claim. (Doc. 12-1 at 11–12; Doc. 17 at 13 n.6). Because this matter is before the Court based on its diversity jurisdiction, the Court must apply Georgia's choice-of-law rules. *Elder*, 563 F. Supp. 3d at 1283. Georgia follows the *lex loci contractus* rule of contract interpretation, in which "the validity, nature, construction, and interpretation of a contract are governed by the substantive law of the state where the contract was made . . . ." *Fed. Ins. v. Nat'l Distributing Co.*, 417 S.E.2d 671, 673 (Ga. Ct. App. 1992) (citation omitted). As Plaintiff does not allege where he purchased his Class Pistol, the Court cannot determine what state law to apply. Recognizing that Plaintiff could have purchased the gun in a third state, the Court considers both Arizona and Georgia law in the absence of additional information. Both Arizona and Georgia law require privity to state a breach of implied warranty claim, and Plaintiff fails to plead privity here. *See Yee v. Nat'l Gypsum Co.*, 2010 WL 2572976, at *2 (D. Ariz. June 22, 2010); *Gill v. Blue Bird Body Co.*, 147 F. App'x 807, 809–10 (11th Cir. 2005); *see, e.g.*, *Acuity Brands Lighting, Inc. v. Manus Products, Inc.*, 2022 WL

15

18460460, at *13 (N.D. Ga. Mar. 14, 2022); *Yee*, 2010 WL 2572976, at *2 ("Under Arizona law, privity of contract is required to maintain a breach of an implied warranty." (quoting *Chaurasia v. GM Corp.*, 126 P.3d 165, 171 (Ariz. Ct. App. 2006)).

"Because an implied warranty of merchantability arises from the sale of goods, it runs only to a buyer who is in privity of contract with the seller." *Acuity Brands Lighting, Inc.*, 2022 WL 18460460, at *13 (citing *Chaffin v. Atlanta Coca–Cola Bottling Co.*, 194 S.E.2d 513, 515 (Ga. Ct. App. 1973) ("an ultimate buyer in Georgia cannot sue the manufacturer directly on a breach of implied warranty where the buyer does not purchase directly from the manufacturer.")); *see also Yee*, 2010 WL 2572976, at *2. Plaintiff must show that privity exists between him and Defendants; but Plaintiff pleads no facts related to the purchase of his Class Pistol and, more importantly, does not allege that he purchased his Class Pistol from either TIMI or Holdings. (*See* Doc. 1 ¶ 48). Furthermore, considering that Defendants are manufacturers and that Plaintiff has set forth no facts alleging that either Defendant engages in retail or direct sales, Plaintiff has not alleged that he is in privity with Defendants rather than a third-party retailer. Plaintiff's conclusory allegation—supported by no facts—that he is in privity with the Defendants is not sufficient to state a claim. (*See* Doc. 1 ¶ 97); *Iqbal*, 556 U.S. at 678. Accordingly, Plaintiff fails to plead contractual privity with Defendants and, therefore, cannot state a claim for breach of implied warranty of merchantability against them.

### D. Unjust Enrichment Claim

Plaintiff also brings a claim for unjust enrichment. (Doc. 1 ¶¶ 120–24). To state a claim for unjust enrichment under Georgia law, Plaintiff must "show that (1) a benefit was provided, (2) compensation for that benefit was not received, and (3) the failure to compensate renders the transaction unjust." *Hill for Credit Nation Capital, LLC v. Duscio*, 292 F. Supp. 3d 1370, 1378 (N.D. Ga. 2018) (citation omitted). "To prevail on a claim for unjust enrichment, a plaintiff thus must ultimately prove (1) that it conferred a benefit on the defendant and (2) that equity requires the defendant to compensate for that benefit." *Owens v. Cedar Point Fed. Credit Union*, 2023 WL 11841023, at *3 (N.D. Ga. Sep. 29, 2023) (citation omitted). "[T]o maintain an action for unjust enrichment, it is not necessary

that the plaintiff allege a direct payment by the plaintiff to the allegedly unjustly-enriched defendant." *Bolinger v. First Multiple Listing Serv., Inc.*, 838 F.Supp.2d 1340, 1367 n.27 (N.D. Ga. 2012) (citing *Haugabook v. Crisler*, 677 S.E.2d 355, 359 (Ga. Ct. App. 2009)). Thus, claims for unjust enrichment have been maintained against manufacturers even when they did not directly sell the product to the consumer. *See e.g.*, *Amin v. Mercedes-Benz USA, LLC*, 349 F. Supp. 3d 1338, 1361–64 (N.D. Ga. 2018) (finding a benefit conferred to a vehicle manufacturer where plaintiffs purchased their vehicle from a Mercedes dealership); *Terrill*, 753 F. Supp. 2d at 1290 (finding a benefit conferred on a washing machine manufacturer when plaintiffs purchased their machines from various retail stores) (dismissing the unjust enrichment claim on other grounds); *see also Hill v. Hoover Co.*, 899 F.Supp.2d 1259, 1268–69 (N.D. Fla. 2012) (finding that plaintiff "sufficiently alleged that she conferred a benefit upon the [Defendant manufacturer] by purchasing the Steam Vac manufactured by the [Defendant] for a retail price of over two hundred dollars" from Walmart).

  Defendants argue that Plaintiff fails to allege that he conferred a benefit on them because he fails to allege who, if anyone, he paid for his Class Pistol. (Doc. 12-1 at 19). While the Eleventh Circuit has not spoken directly on this question, courts in the Circuit have found that to demonstrate that a benefit was conferred upon a defendant manufacturer a plaintiff must, at the very least, establish that they purchased the product from a retailer that carries and sells the defendant's product. *See e.g.*, *Amin*, 349 F. Supp. 3d at 1361–64 (finding a benefit conferred to a vehicle manufacturer where plaintiffs identified the Mercedes dealership where they bought the class vehicle); *Terrill*, 753 F. Supp. 2d at 1290 (finding a benefit conferred on a washing machine manufacturer when plaintiffs identified the retail stores where they purchased the class washing machine) (dismissing the unjust enrichment claim on other grounds); *Hill*, 899 F. Supp. 2d at 1268–69 (finding that plaintiff conferred a benefit upon a vacuum manufacturer when plaintiff alleged they purchased the vacuum from Walmart). Plaintiff pleads no facts related to the purchase of his Class Pistol, other than stating that he purchased it "new[,]" and he does not allege that he purchased his Class Pistol from either TIMI or Holdings. (*See* Doc. 1 ¶ 48). Accordingly, Plaintiff has

not shown that he conferred a benefit to Defendants so as to state a claim for unjust enrichment.

### III. Shotgun Pleading

Defendants move to dismiss Plaintiff's claims because Plaintiff lumps both Defendants together in a shotgun-style pleading. (Doc. 12-1 at 19–20). Plaintiff brings all claims against Defendants collectively because Plaintiff alleges that "Taurus Holdings is the one hundred percent stockholder of [TIMI] and both Defendants were in the business of manufacturing, selling, and distributing the Class Pistols." (Doc. 1 ¶ 15). Thus, Plaintiff alleges, "Defendants are so intertwined contractually for each other's liabilities that they are essentially one entity with regard to the allegations in this Complaint." (*Id.* ¶ 16). Unlike a shotgun pleading, Plaintiff's claims do not fail to specify how each defendant is responsible nor fail to give Defendants adequate notice of the claims against them—they simply allege that each is equally liable. *See Weiland*, 792 F.3d at 1323. Complaints alleging that defendants operated jointly have routinely survived shotgun pleading challenges. *See, e.g.*, *Schmidt v. Disney Parks, Experiences and Products, Inc.*, 2024 WL 1670167, at *4 (M.D. Fla. Mar. 12, 2024); *Norris v. Honeywell Int'l, Inc.*, No. 8:22-cv-1675-CEH-TGW, 2023 WL 6256183, at *4 (M.D. Fla. Sept. 26, 2023) (finding that a complaint was not a shotgun pleading where plaintiff "adequately convey[ed] a theory of collective liability" between a parent corporation and its subsidiary regarding a vaccine policy). Whether Taurus Holdings is indeed liable for its subsidiaries' (TIMI's) conduct is "a question of the merits of Plaintiff's case, to be determined at a later stage in the litigation and after discovery." *Belvins-Ellington v. CooperSurgical, Inc.*, 2023 WL 2111346, at *11 (N.D. Ga. Jan. 17, 2023). For purposes of pleading, however, Plaintiff has adequately alleged a theory of collective liability.

### CONCLUSION

Accordingly, Defendants' Motion to Dismiss (Doc. 12) is **GRANTED.** Plaintiff's complaint (Doc. 1) is **DISMISSED without prejudice.**

**SO ORDERED**, this 27th day of September 2024.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**